UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DONNA A. THOMPSON and MICHAEL R. CASEY, on behalf of themselves and all others similarly situated,<br><br>Plaintiff(s),<br><br>vs.<br><br>INNOVATION VENTURES, LLC., d/b/a LIVING ESENTIALS, a Michigan Corporation,<br><br>Defendants. | Civil Action No.: |

## CLASS ACTION COMPLAINT

Plaintiffs DONNA A. THOMPSON and MICHAEL R. CASEY, by their undersigned attorneys, bring this complaint against Defendant INNOVATION VENTURES, LLC., d/b/a LIVING ESENTIALS, stating as follows:

### THE PARTIES

1. Plaintiff Donna A. Thompson is citizen of the Commonwealth of Pennsylvania who currently resides in Armstrong County.

2. Plaintiff Michael R. Casey is citizen of the Commonwealth of Pennsylvania who currently resides in Allegheny County.

3. Defendant Innovative Ventures, LLC., d/b/a Living Essentials (hereinafter "Innovation") is a Michigan corporation with its principal place of business located in Farmington Hills, Michigan.

## JURISDICTION AND VENUE

4. The Court has jurisdiction over this matter pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332, because the amount in controversy exceeds $5,000,000 and Plaintiffs are citizens of a State different from Defendant Innovation.  Venue is proper in this Court because Plaintiffs reside in this District, purchased the product at issue in this District, and Defendant Innovation does business in this District on a continuous and ongoing basis.  The Court has personal jurisdiction over Defendant because (a) the business transactions and the wrongful conduct at issue occurred within Pennsylvania, (b) Defendant is and has at all pertinent times conducted continuous and systematic business within Pennsylvania, and (c) Defendant has purposefully and knowingly injected its product into the stream of commerce with the intent that it be bought and sold within Pennsylvania. Accordingly, the Court may assert personal jurisdiction over Defendant Innovation without offending traditional notions of fair play and justice.

## FACTUAL ALLEGATIONS

5. Defendant markets its 5-Hour ENERGY® Drink (the "Product") as a healthy vitamin-filled energy drink.  In reality, the Product is nothing more than a shot of caffeine.  The Product is sold in a two-ounce bottle for typically an average retail price of $3.  Annual sales exceed one billion dollars.

6. The following depicts an image that is substantially similar to the packaging and labeling of the Product purchased by Plaintiffs:



7. The following depicts an image that is substantially similar to a display of the Product:



8. As depicted above, the labeling on the Product says in bright yellow writing "Hours of energy now – No crash later" and "Sugar free." The display makes the same "no crash" claim.

9. The representation on the bottle label and the display of "no crash" sends a clear message to purchasers and consumers - - namely, that just two ounces of the Product will provide five hours of sustained energy within minutes without experiencing any negative "crash" side effects later. Defendant's marketing strategy drives home that point with numerous television commercials and advertisements which emphasize the "no crash" superiority of the Product.

10. Defendant's claim of "no crash later" is false, as admitted on the Defendant's website and hidden in microscopic language on the back of the bottle which reads: "No crash means no sugar crash."

11. Defendant, of course, states the obvious. There is no sugar crash because the Product is sugar free. Defendant fails, however, to disclose to consumers that the Product causes a caffeine crash.

12. The Product's label and displays are deceptive and untrue. Defendant has had knowledge of studies since 2007 that show that over 25 percent of users of the Product suffer a caffeine crash.

13. Any attempt by Defendant to disclaim the representation made in its advertising does not shield Defendant from its untruthful and deceptive claims. Reasonable consumers should not be expected to look beyond the deceptive representation made on the display and label to discover the truth about a product set out in virtually unreadable print on the back of the

bottle, or on Defendant's website. This is particularly so given Defendant's misleading marketing campaign which touts the "no crash" claim with no qualification.

14. As a result of Defendant's uniform and consistent misrepresentation of "no crash," Defendant has been able to charge a price premium for the Product over other similar energy drinks.

15. Plaintiffs purchased the Product with Defendant's material, deceptive labeling set forth above.

16. Defendant's marketing practice seeks to differentiate the Product from other energy products by affirmatively claiming that the Product wears off gradually without a crash.

17. For example, the below is an excerpt of advertising found on Defendant's website:[1]

**THE 5-HOUR ENERGY® DIFFERENCE**

Take 5-hour ENERGY®

Until afternoon naps become an accepted part of the work day you may need a little help staying sharp and alert. **Coffee and soda help a little, but how long do they last before you're back for more? But with a 5-hour ENERGY® shot you can leave grogginess behind and sail through your day.**

Take it in seconds

When you need an extra boost you don't want to wait. You want to feel more energetic now. A 5-hour ENERGY® shot takes just seconds to take, so it gets in your system fast.

Feel it in minutes

**In minutes you can feel a 5-hour ENERGY® shot working, helping you recapture the bright, alert feeling you need to power through your day\*.**

---

[1] *See* http://www.5hourenergy.com/product.asp (last accessed February 22, 2013).

Lasts for hours

A 5-hour ENERGY® shot can **help you feel awake and alert for hours*. It wears off gradually. That's because 5-hour ENERGY® is sugar free.**

18.     As a direct and proximate result of the Defendant's deceptive representation and failure to disclose, Plaintiffs have suffered economic damages as a result of purchasing the Product, in that he spent money on an energy drink that did cause a crash – and which therefore lacked the value he had been led to believe the Product had – and for which he paid a premium in the purchase price of the Product. Plaintiffs purchased the Product at its retail price of approximately $3.00.

19.     A reasonable consumer would expect the Product to perform as advertised. The Product's label and packaging convey an express claim of "no crash" and fails to disclose that the Product causes a caffeine crash, information Defendant knows is material to the reasonable consumer. Defendant's inadequate labeling is an unfair deception because Defendant knows the Product causes the same or similar "crash" effects associated with other highly caffeinated no sugar energy drinks, thus rendering the Product unfit for its intended use.

### CLASS ALLEGATIONS

20.     Plaintiffs bring this class action pursuant *to Fed. R. Civ. P*. 23 on behalf of themselves individually and the following class of persons: All individuals or entities who reside in the Commonwealth of Pennsylvania who purchased the Product during the relevant time frame. Excluded from the Class is the Defendant Innovation, any person, firm, trust, corporation or other entity affiliated with Defendant Innovation.

21.     Pursuant to *Fed. R. Civ. P*. 23(a)(1), the members of the Class are so numerous and geographically dispersed that joinder of all members is impracticable. On information and

6

belief, Plaintiffs allege that there are tens of thousands of Class members throughout the Commonwealth of Pennsylvania.

22. Pursuant to *Fed. R. Civ. P.* 23(a)(2), common questions of law and fact exist as to all members of the Class. These common questions include, but are not limited to, whether:

(a) Whether Defendant engaged in unfair methods of competition, unconscionable acts and practices, and unfair and deceptive acts and practices in the conduct of its labeling and advertising of the Product, in violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law;

(b) Whether Defendant breached its express warranty that the Product causes no crash;

(c) Whether Defendant breached its implied warranty that the Product causes no crash;

(d) Whether Defendant materially misrepresented that the Product works as advertised - - namely, that there is no crash;

(e) Whether Defendant knew that the Product does not perform as advertised;

(f) Whether Plaintiffs and members of the Class are entitled to injunctive relief enjoining Defendant from continuing to label the Product as advertised and/or from failing to disclose that the Product does not perform as advertised and that it does cause a caffeine crash after consumption;

(g) Whether Defendant should be made to engage in a corrective advertising campaign advising consumers that the Product's advertising is untrue; and

(h) Whether Plaintiffs and members of the Class have been harmed and the proper measure of relief.

23. The questions set forth above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, and fairness and equity than other available methods for the fair and efficient adjudication of this controversy.

24. Plaintiffs' claims are typical of the claims of absent members of the Class and any applicable Subclasses.

25. Plaintiffs will fairly and adequately represent and protect the interests of the Class. Plaintiffs have no interests that are antagonistic to the absent Class members. Plaintiffs are represented by capable counsel that have experience regarding consumer fraud class actions.

26. Without the Class representation provided by Plaintiffs, virtually no Class members will receive legal representation or redress for their injuries.

27. Class certification is appropriate under *Fed. R. Civ. P.* 23(b)(2) with respect to Plaintiffs' demands for injunctive and declaratory relief against Defendant because Defendant has acted on grounds generally applicable to the Class as a whole. Therefore, the final injunctive and declaratory relief sought in this case is appropriate with respect to the Class and any applicable Subclasses as a whole.

28. Class certification is also appropriate under *Fed. R. Civ. P.* 23(b)(3) with respect to Plaintiffs' demand for damages because common questions of fact or law will predominate in determining the outcome of this litigation and because maintenance of the action as a class action is a superior manner in which to coordinate the litigation.

## COUNT ONE

### Breach of Express Warranty (in Trespass)

29. Plaintiffs and members of the Class re-allege and incorporate by reference each and every allegation contained in Paragraphs 1 through 28.

30. Defendant expressly warranted in its labeling, marketing, advertising and promotion of the Product that there would be no crash.

31. Plaintiffs and members of the Class purchased the Product based upon the said express warranty for which defendants are strictly liable.

32. Defendant breached its express warranty by selling a product that does cause caffeine crashes.

33. As a direct and proximate result of Defendant's breach of its express warranty, Plaintiffs and members of the Class have been damaged in that they did not receive the product as specifically warranted and/or paid a premium for the product based on Defendant's representations.

34. Plaintiffs are not required to provide notice to Defendant before the filing of this complaint because Defendant already knew about the defect of the Product and because Plaintiffs suffered a personal injury from the use of the Product.

### COUNT TWO

### Breach of Implied Warranty of Merchantability (in Trespass)

35. Plaintiffs and members of the Class re-allege and incorporate by reference each and every allegation contained in Paragraphs 1 through 34.

36. Defendant impliedly warranted that use of the Product would not result in a crash and that the Product is fit for its intended purpose. Defendant did so with the intent of inducing Plaintiffs and members of the Class to purchase the Product.

37. Defendant breached its implied warranty in that the Product does in fact cause a crash for which defendants are strictly liable.

38. Had Plaintiffs and members of the Class know the true facts, they either would not have purchased the Product or would not have been willing to pay the premium price Defendant charged for the Product.

## COUNT THREE

### Violations of Pennsylvania Unfair Trade Practices and Consumer Protection Law

39. Plaintiffs and members of the Class re-allege and incorporate by reference each and every allegation contained in Paragraphs 1 through 38.

40. Plaintiffs bring this claim individually and on behalf of the members of the Class.

41. Defendant is a "person" pursuant to the terms of Section 201-2(2) of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL").

42. The packaging, labeling and display possessed by the Plaintiffs, and members of the Class, constitute "documentary material" pursuant to the terms of Section 201-2(1) of the UTPCPL.

43. Each of the Product that were ultimately possessed by the Plaintiffs, and members of the Class, was purchased primarily for personal purposes.

44. Defendant's action of injected its Product into the stream of commerce with the intent that it be bought and sold within Pennsylvania which as a result was ultimately possessed by the Plaintiffs, and members of the Class, constitutes "trade" or "commerce" as defined by Section 201-2(3) of the UTPCPL.

45. Defendant's violated express and implied warranties in the labeling and displaying of its Product that was ultimately possessed by Plaintiffs and members of the Class.

46. The aforesaid actions of Defendant constitute "unfair methods of competition" and "unfair or deceptive acts of practices" pursuant to the following provisions of the UTPCPL: Section 201-2(4)(ii), Section 201-2(4)(v), Section 201-2(4)(vii), and Section 2012(4)(xxi).

47. The aforesaid actions of Defendant referenced above constitute unlawful actions proscribed by Section 201-3 of the UTPCPL.

48. As a direct and proximate cause of the aforementioned unlawful actions of Defendant, Plaintiff has suffered economic loss.

49. Pursuant to Section 201-9.2 of the Consumer Protection Law, Plaintiffs are entitled to a judgment in an amount up to three times the actual damages sustained, but not less than One Hundred Dollars ($100.00), and the Court may provide such additional relief as it deems necessary and proper, including punitive damages.

50. In addition, Plaintiffs are entitled to reimbursement for all reasonable attorney's fees and costs incurred as a result of bringing this action pursuant to Section 201-9.2 of the UTPCPL.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on their own behalf and on behalf of the members of the Class, pray for the following relief:

A. An order that this action may be maintained as a class action under *Fed. R. Civ. P.* 23(b)(1)(A) or 23(b)(2) and/or 23(b)(3);

B. An order requiring Defendant to pay damages to Plaintiffs and members of the Class damages under the UTPCPL with any such amount to include interest;

C. An order requiring Defendant to pay damages to Plaintiffs and members of the Class for breach of its express warranty with such amount to include interest;

D. An order requiring Defendant to pay damages to Plaintiffs and members of the Class for breach of its implied warranty with such amount to include interest;

E. An order requiring Defendant to pay damages to Plaintiffs and members of the Class for unjust enrichment;

F. An order enjoining Defendant from making any further false or misleading statements to Plaintiffs and members of the Class;

G. An award of attorneys' fees and expenses; and

H. Any other further or different relief to which the Plaintiffs may be entitled.

## JURY DEMAND

Plaintiffs respectfully demand a trial by jury.

DATED: March 7, 2013

**LAW OFFICE OF ALFRED G. YATES, JR., P.C.**

By: /s/ Alfred G. Yates, Jr.
Alfred G. Yates, Jr. (PA17419)
Gerald L. Rutledge (PA62027)
519 Allegheny Building
429 Forbes Avenue
Pittsburgh, PA 15219
Telephone: (412) 391-5164
Facsimile: (412) 471-1033
Email: yateslaw@aol.com

Vincent A. Coppola (PA 50181)
PRIBANIC & PRIBANIC
513 Court Place
Pittsburgh, PA 15219
Telephone: (412) 281-8844

              Facsimile: (412) 281-4740
              Email: vcoppola@pribanic.com

Additional Counsel:

James S. Ward
Patrick C. Cooper
WARD & WILSON, L.L.C.
2100 Southbridge Parkway
Suite 580
Birmingham, Alabama 35209
Telephone: (205) 871-5404
Facsimile: (205) 871-5758